IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

|                                   |   |                        |
|-----------------------------------|---|------------------------|
| SECURITIES AND EXCHANGE           | : |                        |
| COMMISSION,                       | : |                        |
|                                   | : |                        |
| Plaintiff,                        | : | Civil Action No.       |
|                                   | : |                        |
| v.                                | : | 1:16-cv-02572-LMM      |
|                                   | : |                        |
| THOMAS D. CONRAD, JR.,            | : |                        |
| STUART P. CONRAD,                 | : |                        |
| FINANCIAL MANAGEMENT              | : |                        |
| CORPORATION, and                  | : |                        |
| FINANCIAL MANAGEMENT              | : |                        |
| CORPORATION, S.R.L.,              | : |                        |
|                                   | : |                        |
| Defendants                        | : |                        |

_____ :

## SECURITIES AND EXCHANGE COMMISSION'S
## BRIEF IN RESPONSE TO MOTION TO DISMISS
## OF DEFENDANT STUART CONRAD

As an officer and director of Defendants Financial Management Corporation

("FMC") and Financial Management Corporation S.R.L. ("FMC Uruguay")),

Stuart Conrad owed the World Opportunity Master Fund[1] fiduciary duties.  He

knew that Thomas Conrad ("Conrad") froze redemptions from the Fund, but did

---

[1] The Commission has pled details of four unregistered funds that Thomas Conrad sold to investors: World Opportunity Fund, L.P. ("WOF"), World Fund II, L.P. ("World Fund II"), World Opportunity Fund (BVI) Ltd. ("BVI") (collectively "the feeder funds") and World Opportunity Master Fund L.P. in which the feeder funds invested.  The Commission will refer collectively to all four funds collectively as "the Fund."

not enforce that rule against himself, FMC, Stuart Conrad, Stuart's business partner, or other favored investors. While other investors were not allowed access to their money, Stuart Conrad took out more than $400,000. Stuart Conrad's conduct is precisely the type of conduct that the law of aiding and abetting liability is designed to reach, but he now seeks dismissal of the Commission's complaint (hereafter "the Complaint") on the grounds that the Commission has not set forth claims on which relief can be granted. His arguments are meritless. The Securities and Exchange Commission ("Commission" or "SEC") asks that the Court deny his motion to dismiss.

## I.   <u>FACTS</u>

Thomas Conrad misrepresented his background to convince people to entrust him with their money. He has presented himself as uniquely qualified to manage money (Complaint ¶¶21, 49-52), but never disclosed that the SEC barred him from association with any broker-dealer, finding Conrad "unfit" to engage in the securities business "in any capacity." (Complaint ¶¶56-58). Conrad's misrepresentations and omissions worked; he convinced no less than 92 people to entrust him with more than $10.7 million. (Complaint ¶¶30-31). He hired his son, Defendant Stuart Conrad, as vice president and director of FMC and FMC Uruguay, and as a portfolio manager for the Fund. (Complaint ¶¶10, 37).

2

In 2008, the Fund was experiencing increased requests for redemptions. (Complaint ¶72).  People needed their money and asked Conrad to give it back to them. (Complaint ¶73).  Of course, being compensated through fees on the assets he managed, Conrad knew that every dollar redeemed would reduce his income. (Complaint ¶39).  In November and December 2008, Conrad sent notice that redemption requests were being frozen and that no redemptions would occur unless all were "treated equally." (Complaint ¶¶71, 74).  He never lifted that rule. (Complaint ¶¶79, 91).  Rather, without telling investors, Conrad broke that rule for himself, FMC, members of his family, certain favored investors (Complaint  ¶¶76-85), and, most relevant to this motion, Stuart Conrad.  Neither Conrad nor Stuart Conrad ever disclosed that they were taking redemptions while others waited for their money.  (Complaint ¶75).  Conrad redeemed roughly $2 million of FMC's investment in the Fund.  (Complaint ¶76).  Stuart Conrad withdrew more than $440,000 while other investors had their redemption requests refused.  (Complaint ¶¶2, 79, 85, 91).

Like FMC and like his father, Stuart Conrad benefitted from undisclosed redemptions from the funds while other investors' requests for redemption were rejected.  (Complaint ¶79).  Stuart Conrad received $160,000 from the Fund in 2010 alone, usually in increments of $15,000.  (Complaint ¶80).  In April 2012,

FMC redeemed $25,000 from its WOF Master account and paid the funds to AIR, a company owned by Stuart Conrad. (Complaint ¶83). During 2013 and the first six months of 2014, WOF Master made ten payments totaling $214,000 to both Stuart Conrad and AIR. (Complaint ¶84). In June 2013, WOF Master loaned $20,000 to Investor A, an investor in WOF Master and the co-owner of Stuart Conrad's business, AIR. (Complaint ¶93). Cumulatively, between 2009 and 2014, Stuart Conrad received, either directly or indirectly, approximately $444,000 in redemptions from his WOF Master investments or redemptions from the WOF Master investments of Conrad and/or FMC. (Complaint ¶85).

At the time of each of the redemptions and receipts outlined above, Stuart Conrad knew that Conrad had notified all investors that all redemptions requests would be suspended. (Complaint ¶87). He also knew that FMC had pledged to investors that FMC could "not disburse any funds to partners unless all are treated equally" (Complaint ¶88), and that each of the redemptions and receipts he received was a deviation from the policy that FMC had disclosed to investors and which purportedly applied to all investors. (Complaint ¶90). At the time of each of his redemptions and receipts, Stuart Conrad knew that neither he, FMC, nor Conrad, was disclosing to investors or prospective investors that Stuart Conrad

received money from Fund redemptions when other investors were denied such redemptions.  (Complaint ¶91).

## II.   <u>LEGAL STANDARDS</u>

The threshold for withstanding a motion to dismiss based on a claim of inadequate pleading is "exceedingly low."  *In the Matter of Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995).  To survive a motion to dismiss, a complaint should contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (emphasis added).  The complaint is sufficient if it raises a "reasonable expectation that discovery will reveal evidence" of the violations alleged.  *Twombly*, 550 U.S. at 556.

Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud be pled with particularity.  Fed.R.Civ.P. 9(b).  "To properly allege fraud under Rule 9(b), a plaintiff 'must state with particularity the circumstances constituting fraud or mistake.'"  *SEC v. Strebinger*, 114 F.Supp.3d 1321, 1329 (N.D. Ga. 2015), *quoting* Fed.R.Civ.P. 9(b).  "This particularity requirement is

satisfied when a complaint includes 'facts as to time, place, and substance of the defendant's alleged fraud.'"  *Strebinger*, 114 F.Supp.3d at 1329, *quoting U.S. ex rel. Clausen v. Lab Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002). "[T]he pleading of detailed evidentiary matter is unreasonable at this early stage," and an allegation of a "particular time frame" suffices as to when the deceptive acts were performed.  *SEC v. U.S. Environmental, Inc.*, 82 F.Supp.2d 237, 240 (S.D.N.Y. 2000); *see also SEC v. Terezakis*, 1997 WL 720760, at *2 (E.D.N.Y. Sept. 30, 1997) (a Commission complaint alleging a Ponzi scheme met the requirements of Rule 9(b) where it "alleged … the source of the alleged misrepresentations, … that the misrepresentations were made between 1988 and 1992 and that they were made in the course of social gatherings in [defendants'] homes and in one-on-one meetings" even though it did not "specify the exact date and place of each alleged misrepresentation").

## III.   <u>DISCUSSION</u>

### A.   <u>The Complaint Provides Adequate Notice of the Alleged Violations</u>

Defendant argues that the Complaint is an impermissible "shot gun pleading," apparently reasoning that the counts in the complaint incorporate all the factual allegations.  Dkt 9-1 at 1.  Courts have rejected this argument  *See, e.g.*, *SEC v. City of Miami*, 988 F.Supp.2d 1343, 1354 (S.D.N.Y. 2013) (rejecting

6

shotgun pleading claim because the complaint did not incorporate every antecedent allegation by reference into each subsequent claim for relief).  Complaints are held to be improper shotgun pleadings when defendants cannot tell what claims are asserted against them.  Here, each count specifically identifies the defendants against whom it is asserted.  To the extent that there may be instances of over-inclusion of factual allegations which have been incorporated by reference in particular counts, this would not be fatal to the pleading.  *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015).

      **B.**    **Stuart Conrad Aided and Abetted the Preferential Redemption Scheme**

      **1.**    **Elements of Aiding and Abetting Violations**

Under the antifraud provision of the Securities Act[2] and the Exchange Act,[3] and the Advisers Act[4] there is a three-part test for aiding and abetting liability: "To succeed in such an action, the SEC must establish three elements . . .  First, there must have been a primary violation ….  Second, the aider and abettor must have been 'generally aware' or known that 'his or her actions were part of an

---

[2] The Commission has alleged that Stuart Conrad aided and abetted violations of Section 17(a)(1) and Section 17(a)(3) of the Securities Act.  Complaint ¶¶105-107).

[3] The Commission has alleged that Stuart Conrad aided and abetted violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c ) thereunder.  Complaint ¶¶112-114).

[4] The Commission has alleged that Stuart Conrad aided and abetted violations of Section 206(1), 206(2), 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.  Complaint ¶¶122-124, 128-130).

overall course of conduct that was improper or illegal ….”  Third, the aider and abettor must have 'substantially assisted the primary violation.'”  *SEC v. Strebinger,* 114 F.Supp.3d 1321, 1333 (N.D. Ga. 2015); *SEC v. Big Apple Consulting USA Inc.*, 783 F.3d 786, 800 (11th Cir. 2015); *SEC v. Nutmeg Group, LLC*, 162 F.Supp.3d 754, 782 (N.D. Ill. 2016)(internal citations omitted).  The Commission has alleged in Counts II, V, VIII, and X that Stuart Conrad aided and abetted his codefendants' violations of the Securities Act, the Exchange Act, and the Advisers Act.

### 2.     The Commission Has Adequately Pled Primary Violations

In response to the Motion to Dismiss filed by Stuart Conrad's codefendants (collectively "the primary violators") the Commission showed that it has adequately pled those primary violations.  The Commission incorporates by reference its brief in response to the primary violators' motion, and addresses those primary violations further below.

### a.     Securities Act and  Exchange Act

### 1.     The Preferential Redemption Scheme

The Commission has described in detail Defendants' scheme to grant redemptions to themselves and favored investors (Complaint ¶¶71-97), to the detriment of other investors seeking to redeem (hereafter "the Preferential

Redemption Scheme").  As to those violations the Commission has pled the details regarding when the freeze of redemptions was instituted (Complaint ¶71), Thomas Conrad's ("Conrad") stated reasons for the freeze (Complaint ¶72), Conrad's communication of the freeze to investors (Complaint ¶74), the number of investors seeking to redeem as of a specific date (Complaint ¶73), Conrad's redemptions for his personal benefit (Complaint ¶76), how Conrad used the money he obtained from those redemptions (Complaint ¶¶77 and 78), specific occasions (with dates specified) on which Conrad redeemed for the benefit his son and codefendant Stuart Conrad (Complaint ¶¶79-85), and two separate occasions (with dates specified) on which Conrad granted redemptions to favored investors (Complaint ¶¶93-97).

Apart from any misrepresentations or omissions aimed at prospective investors,[5] Defendants' Preferential Redemption Scheme operated as a fraud or deceit against all investors in the Funds, both those who had requested redemptions and those who had not.  That a fund is not allowing investors to withdraw their money (or is allowing redemptions only to insiders) is material in that a reasonable investor would find it significant, regardless of whether he or she had requested a

---

[5] "Rule 10b-5 provides additional bases for the SEC's claims beyond the making of fraudulent statements. Specifically, it also prohibits employing 'any device, scheme, or artifice to defraud' or engaging in 'any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person . . . .'" *SEC v. Landber*g, 836 F.Supp.2d 148, 154 (S.D.N.Y. 2011).

redemption.  *See SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1245 (11th Cir.
2012).  The Preferential Redemption Scheme therefore describes primary
violations of Sections 17(a)(1) and (3) of the Securities Act, Section 10(b) of the
Exchange Act and Rule 10b-5(a) and (c) thereunder[6] as well as Section 206(4) of
the Advisers Act and Rule 206(4)-8(a)(2) thereunder.[7]  The Commission has
adequately, and with particularity, pled primary violations of those provisions in
Counts I, II, IV, VI, VII, and IX of the Complaint.

As did his codefendants, Stuart Conrad asserts that the Complaint does not
allege that the redemption freeze was in effect at the time he took preferential
redemptions.  Docket 9-1 at p. 4.  He is mistaken.  The Commission alleges that, at
the time of Defendants' preferential redemptions, other redemption requests were
being denied.  (Complaint ¶¶2, 79, and 91).  Those allegations are taken as true at
this stage.  Moreover, because the Commission has pled liability under the
antifraud provisions proscribing schemes to defraud and act, practices, and courses
of business which operate as a fraud or deceit, the Commission need not identify

---

[6] Rule 10b-5(c) proscribes engaging "in any act, practice, or course of business which operates or would operate as a fraud, or deceit on any person.

[7] Rule 206(4)-8 prohibits any investment adviser to a pooled investment vehicle from engaging "in any act, practice or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle."

10

any particular misrepresentation or omission.  *Stoneridge Investment Partners v. Scientific Atlanta Inc.*, 552 U.S. 148, 158 (2008).

## 2.    "In Connection With"

To the extent the Defendant's "in connection with" argument is directed at the allegations regarding the Preferential Redemption Scheme, it is unavailing. Investments in the Fund were securities (Complaint ¶33).  *See also*, *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 755-56 (11th Cir. 2007), and *Adams v. Rothstein*, 2012 WL 1605096 at *4 (S.D. Fla. 2012) (finding limited partnership interests to be securities).  Moreover, the very nature of a "redemption" is the sale of a security and the withdrawal of the proceeds of that sale.  Not only did the Defendants' Preferential Redemption Scheme touch upon a securities transaction *See SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993), *quoting SEC v. Clark*, 915 F.2d 439, 449 (9th Cir. 1990) ("the 'in connection with' requirement is met if the fraud alleged 'somehow touches upon' or has 'some nexus' with 'any securities transaction'"), but the sale of security was part and parcel of the deceitful conduct.  Defendants sold their own shares and took the cash while denying the same to investors who sought to sell their shares but were refused because they were not family members or favored investors.

A factually similar case further supports the sufficiency of the Commission's allegations as to conduct "in connection with" the offer, purchase, or sale of a security.  In *SEC v. Wealth Strategy Partners, LC*, 2015 WL 3603621 (M.D. Fla. 2015), the  Commission pursued defendants for violation of the antifraud provisions of the Securities Act, the Exchange Act in a case involving private investment funds.  The Commission alleged that the defendants violated those provisions in three different ways.  First, the Commission alleged that the defendants took out undisclosed loans to artificially inflate the size of the fund, keeping secret the various guarantees issued in exchange for those loans and the high interest rates applicable to them.  *Wealth Strategies,* 2015 WL 3603621 at *1. Second, the Commission alleged that the defendants made misrepresentations in newsletters that they sent investors in the fund.  *Id*.  Finally, the Commission alleged a preferential redemption scheme similar to the one alleged in this case.  *Id*. Defendants moved to dismiss, arguing that the SEC's claims should fail because, defendants claimed, there were "(1) no false representations, (2) made in connection with the offer or sale of security, (3) and Defendants had no duty to subordinate their withdrawal requests to other withdrawal requests."  *Id.* at *7.

In denying the defendants' motion to dismiss, the Court held, "The SEC's contention is that Alholtz engaged in fraudulent practices by redeeming his

investment while telling investors they could not redeem their own funds . . .

These allegedly fraudulent practices are an adequate factual basis to support a

claim for violations of the securities laws." *Id*. at *7.  The Court also held, "These

allegations are sufficient to satisfy the misrepresentation requirement, as well as

satisfy the requirement that they were made in connection with the offer or sale of

a security." *Id*. at *7.

### 3.    Scienter

The Commission has pled the requisite scienter for the primary violations.

Specifically it has pled that Conrad needed cash, that he allowed redemptions

(sales) for himself and his codefendants while denying them to others.  (Complaint

¶¶100, 110, 113, 117).

### b.    Advisers Act 206(4) and Rule 206(4)-8

The same allegations that establish the Securities Act and Exchange Act

violations likewise establish violations of Section 206(4) of the Advisers Act and

Rule 206(4)-8 thereunder.  "Facts that establish violations of other anti-fraud

securities laws, including Section 17(a) [of the Securities Act] and Section 10(b)

[of the Exchange Act] also establish violations of Section 206 [of the Advisers

Act] if the defendant is an investment adviser." *Wealth Strategies*, 2015 WL

3603621 at *3.  Section 206(4) and Rule 206(4)-8 proscribe misconduct against the

13

individuals who invested in the Defendants' Fund, rather than the Fund itself.
Therefore, the denial of redemption requests to Fund investors while the
Defendants were surreptitiously taking redemptions for themselves and their
friends, establishes violation of Section 206(4) of the Advisers Act and Rule
206(4)-8 thereunder.

     **c.**     **Advisers Act 206(1) and 206(2)**

     **1.**     **The Commission Has Alleged the Requisite Fiduciary Duty**

Section 206 of the Advisers Act "establishes a statutory fiduciary duty for
investment advisers," whether registered or not.  *SEC v. Nutmeg Group, LLC*, 162
F.Supp.3d 754, 775-6, 778 (N.D. Ill. 2016).  "This duty can be violated by what is
done, what is said, and what is not said."  *Nutmeg*, 162 F.Supp.3d at 778.  The
same conduct establishes violation of Section 206(2) of the Advisers Act,[8] (Count
VII), which does not require a showing of scienter. *SEC v. Mannion*, 789
F.Supp.2d 1321, 1339 (N.D. Ga. 2011).  As an officer and director of Defendant
FMC (Complaint ¶¶10, 37), Stuart Conrad owed fiduciary duties to FMC's client,
the Fund.  *SEC v. Eldridge*, 2007 WL 7654404 at *11 (N.D. Ga. 2007).

---

[8] "It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of
interstate commerce, directly or indirectly (2) to engage in any transaction, practice, or course of business
which operates as a fraud or deceit upon any client or prospective client."

### 2.      The Commission Has Alleged a Breach of Fiduciary Duty

Each episode of a preferential redemption constituted a separate violation of

Sections 206(1) and 206(2) of the Advisers Act.  Misuse of Fund assets establishes

a violation of the Advisers Act.  As one court put it, "'diverting funds away from

the Fund, even for a short period of time, always carries with it the risk that some

or all of the money will be lost or at least unavailable for some period of time.'"

*Nutmeg*, 162 F.Supp.3d at 779, *quoting SEC v. Mannion*, 789 F.Supp.2d 1321,

1341 (N.D. Ga. 2011).  In addition, by virtue of the fiduciary duties imposed on

them by Section 206 of the Advisers Act, investment advisers are required to

disclose all material conflicts of interest.  *SEC v. Capital Gains Research Bureau,*

*Inc.*, 375 U.S. 180, 191 (1963).  That Stuart Conrad, an officer and director of the

investment adviser, was allowed to take redemptions while investors were not,

created a conflict that the adviser was under a duty to disclose, but did not.

Moreover, the Commission has alleged numerous primary violations of Sections

206(1) and 206(2) of the Advisers Act through the numerous misuses of Fund

assets alleged in the Complaint.  The Preferential Redemption Scheme was just one

example of such misuse.

### 3.   The Commission Has Pled Stuart Conrad's Knowing Participation in Wrongful Conduct

As referenced above, the second element of aiding and abetting liability is knowing participation in wrongful conduct.  "This awareness requirement can be satisfied by extreme recklessness, which can be shown by 'red flags,' 'suspicious events creating reasons for doubt,' or 'a danger … so obvious that the actor must have been aware of' the danger of violations."  *SEC v. K.W. Brown and Co.*, 555 F.Supp.2d 1275, 1307 (S.D. Fla. 2007), *quoting Howard v. SEC*, 376 F.3d 1136, 1143 (D.C. Cir. 2004).  And, certainly, the knowledge or awareness requirement is satisfied by recklessness when the "alleged aider and abettor is a fiduciary or active participant."  *SEC v. K.W. Brown and Co.*, 555 F.Supp.2d 1275, 1307 (S.D. Fla. 2007).

The Commission has adequately alleged Stuart Conrad's knowing participation in the Preferential Redemption Scheme.  The paragraphs that reveal those allegations most succinctly are paragraphs 2, 79, and 91.  At paragraph 2 of the Complaint, the Commission alleges:  "From 2010 through late 2014, Conrad directed preferential redemptions and other disbursements out of WOF Master and its feeder funds to himself, his son (defendant Stuart Conrad), extended family, and certain favored investors, while representing to other investors that *redemptions*

*were suspended*."  (Complaint ¶2) (emphasis added).  At paragraph 79, the

Commission alleges, "Like FMC and like his father, Stuart Conrad benefitted from

undisclosed redemptions from the funds while other investors' *requests for*

*redemption were rejected*."  (Complaint ¶79) (emphasis added).  And, at paragraph

91, the Commission alleges: "At the time of each of the redemptions and receipts

outlined above, Stuart Conrad knew that neither FMC, Conrad, nor he were

disclosing to investors or prospective investors that Stuart Conrad received money

from fund redemptions when other investors were *denied such redemptions*."

(Complaint ¶91) (emphasis added).  The other paragraphs between paragraph 74

and paragraph 93 further detail Stuart's knowing involvement in the Preferential

Redemption Scheme, (Complaint ¶¶74-91), with specific reference to dates,

amounts, and favored investors who, because of their connection to Stuart Conrad,

received redemptions and improper "loans" from the Fund, when other investors

could not get their money out.  (Complaint ¶93).  At this stage, each of those

allegations is deemed true.  Defendant's argument to the contrary is ill-timed.

### 4. The Commission Has Alleged Substantial Assistance

The final element of aiding and abetting liability is substantial assistance. "The element of substantial assistance is met when, based upon all the circumstances surrounding the conduct in question, a defendant's actions are a 'substantial causal factor' in bringing about the primary violation." *SEC v. K.W. Brown and Co.*, 555 F.Supp.2d 1275, 1307 (S.D. Fla. 2007), *citing Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1013 (11th Cir. 1985); and *Rolf v. Blyth, Eastman, Dillon & Co., Inc.*, 570 F.2d 38, 48 (2d Cir. 1978).

Defendant Stuart Conrad's primary challenge to the allegations against him is that the Complaint fails to allege how he substantially assisted the fraud. Dkt 9-1 at p. 7-8. But, , in paragraphs 74 through 91, the Commission sets forth in detail facts regarding Stuart Conrad's requests for and receipt of preferential redemptions and his connection to other preferential redemptions directed to his outside business and his business partner. Because the redemption (sale) of Fund shares and the failure to disclose the same *constituted* the prohibited scheme, acts, practices, courses of business, and breach of fiduciary duty, each such redemption was the violation itself. By requesting and receiving preferential redemptions, Stuart Conrad "associate[d] himself with the [fraud], participate[d] in it as in something that he wishe[d] to bring about, [and sought] by his action to make it

18

succeed." *SEC v. Apuzzo,* 689 F.3d 204, 206 (2d Cir.2012).[9]  The Commission's

allegations are true at this stage. The Commission's allegations are true at this

stage.

### C.    Contrary to Defendants' Argument, No Losses Need Be Shown in an Enforcement Action

Defendant emphasizes that the Commission has not alleged investor losses

or damages of any kind.  Docket 9-1 at p. 4.  But such allegations are neither here

nor there in an action to enforce federal securities laws.  The SEC need not prove

that "any investor actually relied on the misrepresentations or that the

misrepresentations caused any investor to lose money."  *Morgan Keegan & Co.*,

678 F.3d at 1244.  "Therefore the SEC does not have to identify individual

investors who relied upon the misrepresentations or omissions ...."  *Trabulse*, 526

F.Supp.2d at 1005; *SEC v. Hopper*, Case No. A-H-04-1054, 2006 WL 778640 at

n.15 (S.D.Tex. Mar 24, 2006)("Unlike a private litigant, the SEC is not required to

allege or prove . . . that specific investors suffered actual harm as a result of the

defendant's misrepresentations."); *SEC v. Prater*, 296 F.Supp. 2d 210, 215 (D.

Conn. 2003)(same).

---

[9] "[A] high degree of knowledge may lessen the SEC's burden in proving substantial assistance." *Apuzzo*,
689 F.3d at 215.

### D.     Defendant Misrepresents the Complaint

The Defendant spills substantial ink detailing what the Commission

allegedly has *not* pled.  Docket 9-1 at pp. 4-5.  Unfortunately, in his zeal to

compile a long list, he has slipped in a few allegations that the Commission has

most certainly pled.  For example, Defendant claims that the Commission has not

pled that Stuart Conrad "held any paid position in WOF Master or FMC."  Docket

9-1 at p. 5.  In fact, though, the Commission has alleged that Stuart Conrad is a

vice president and member of the Board of FMC and FMC Uruguay and a

portfolio manager of WOF Master (Complaint ¶10), and that he received $160,000

in 2010 (Complaint ¶81), $30,000 from FMC in 2011 (Complaint ¶82), and

$214,000 in 2013 and 2014 (Complaint ¶84).  Also, Defendant claims that the

Commission has not alleged that Stuart Conrad "engaged, participated in or

facilitated any activities alleged to be wrongful" (Docket 9-1 at p. 5) when the

Commission has pled just that in substantial detail.  (Complaint ¶¶2, 10, 74-93).

As to the matters that Defendant gets right regarding what the Commission

has not pled, they are neither here nor there as they are not necessary elements of

the offenses charged.  What is more, discovery very likely will reveal that quite a

few facts on that list did occur.  The task before the Court now, though, is to assess

20

what the Commission *has* pled and whether it gives fair notice to the Defendant. His claims to the contrary notwithstanding, the Commission has carried that burden.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Commission asks that the Court deny Stuart Conrad's Motion to Dismiss.

Dated:  October 13, 2016.

Respectfully submitted,

*/s/ M. Graham Loomis*
Regional Trial Counsel
Georgia Bar Number 457868

Pat Huddleston
Senior Trial Counsel
Georgia Bar Number 373984

Counsel for Plaintiff
U.S. Securities and Exchange Commission
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, Georgia 30326-1234
404.842.7616
loomism@sec.gov
huddlestonp@sec.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing has been prepared using Times New Roman 14-point font, as allowed by Local Rule 5.1C.

This 13th day of October, 2016.

*/s/ Pat Huddleston*
Pat Huddleston
Senior Trial Counsel
Georgia Bar No. 373984

COUNSEL FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
950 E. Paces Ferry Road, N.E.  Suite 900
Atlanta, Georgia 30326
(404) 842-7616
huddlestonp@sec.gov

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this day served a true and correct copy of SEC's *Brief in Response to Motion to Dismiss of Defendant Stuart Conrad* by filing the documents with the Clerk of Court using the CM/ECF system.  That filing system will automatically send e-mail notification of such filing to the registered attorneys of record

This 13th day of October, 2016.

/s/ *Pat Huddleston*
Pat Huddleston
Senior Trial Counsel
Georgia Bar No. 373984

COUNSEL FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
950 E. Paces Ferry Road, N.E.  Suite 900
Atlanta, Georgia 30326
(404) 842-7616
huddlestonp@sec.gov