IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| | : | 1:16-CV-2572-LMM |
| v. | : | |
| | : | |
| THOMAS CONRAD, FINANCIAL MANAGEMENT CORPORATION, and FINANCIAL MANAGEMENT CORPORATION, S.R.L., | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## ORDER AND FINAL JUDGMENT

This case comes before the Court on Plaintiff's Motion for Remedies [92-1]. After due consideration, the Court enters the following Order:

## I.   BACKGROUND

This matter arises from the fraudulent operation of a $10.7 million "fund of funds" by Defendant Thomas Conrad ("Conrad" or "Dr. Conrad"). Dkt. No. [1] ¶ 1. Conrad is the owner and controlling officer of Defendants Financial Management Corporation ("FMC") and Financial Management Corporation, S.R.L. ("SRL"). Id. ¶ 9.

Plaintiff Securities and Exchange Commission ("the SEC") brought this action on July 15, 2016, charging six separate counts of fraud against Defendants and four counts of aiding and abetting fraud against former Defendant Stuart

Conrad pursuant to various provisions of the Securities Act, the Securities Exchange Act, and the Investment Advisers Act. Id. The Complaint alleges that Defendant Conrad controls Defendant entities FMC and SRL, and together these Defendants fraudulently sold and redeemed interests in hedge funds they operate, including World Opportunity Fund, L.P. ("WOF")[1], World Opportunity Master Fund, L.P. ("WOF Master"), World Fund II, L.P. ("World Fund II") and World Opportunity Fund (BVI) Ltd. ("BVI") (collectively, "the funds"). Id. ¶ 1. WOF, World Fund II, and BVI are the feeder funds into WOF Master, although only WOF and World Fund II are currently active feeder funds since all BVI investors were moved into WOF. Dkt. No. [67] ¶ 21. In a master-feeder structure, investors buy limited partnership interests in a feeder fund, and the feeder funds in turn invest their assets in the master fund. Dkt. Nos. [64-2] ¶ 11; [67] ¶ 11.

The Court dismissed all counts against Stuart Conrad on February 22, 2017, leaving only fraud Counts I, II, IV, VI, VII, and IX against Defendants Conrad, FMC, and SRL. Dkt. Nos. [1]; [22]. Further, the Court partially dismissed certain counts that relied on allegedly fraudulent activities that either could not meet the elements of those counts or could not be attributed to Defendant SRL because they predated SRL's existence. Dkt. No. [22] at 17–18, 23–25.

On May 11, 2018 and June 25, 2018 the parties filed cross-motions for

---

[1] WOF was previously named GEA and CCP. Dkt. No. [67] ¶ 26. For the sake of clarity, the Court will refer to the relevant fund only as "WOF" even when discussing facts from a time when it had a different name.

summary judgment. Dkt. Nos. [64]; [68]. The Court granted Plaintiff's Motion as to Counts I, II, and IV against Conrad and FMC arising from the nondisclosure of Conrad's disciplinary history, and also granted Plaintiff's Motion as to Counts I, II, IV, and IX, arising from Defendants' fraudulent redemption practices. See Dkt. No. [83] at 53–54. The Court denied summary judgment on Plaintiff's remaining claims, finding material issues of fact, and the Court denied Defendants' Summary Judgment Motion in its entirety. Id.

The Court granted summary judgment to Plaintiff on counts relating to two categories of claims. First, the "failure to disclose disciplinary history" category encompassed allegations regarding World Fund II offering memoranda from January 2011 and January 2013, a World Fund II disclosure brochure from January 2012, WOF Master marketing materials from 2014, World Fund II investor fact sheets distributed between December 2011 and January 2014, and various face-to-face and telephonic pitches to prospective investors. See Dkt. No. [1] ¶¶ 49–58. Plaintiff alleged that Defendants fraudulently touted Conrad's wealth management experience and career accomplishments going back to 1965, while omitting a 1971 SEC opinion against Defendant Conrad that barred him from associating with any securities broker or dealer.[2] This category also

---

[2] See In the Matter of Thomas D. Conrad, Jr. Margaret J. Conrad Roland L. Gonzales, Jr. Conrad & Co., Inc., File No. 3-2338, 44 S.E.C. 725, 1971 WL 120507 (Dec. 14, 1971). Defendant Conrad was the president of registered broker-dealer Conrad & Company, Inc. The Commission's decision was based on findings that Conrad willfully aided and abetted certain willful violations of securities laws

encompassed allegations that Defendants included certain false and misleading information in investor fact sheets regarding the historical performance of fund investments and whether the funds were audited. Id. ¶¶ 59–62. The Court ultimately granted summary judgment to Plaintiff on Counts I, II, and IV based on Defendants' material nondisclosure of Defendant Conrad's disciplinary history. See Dkt. No. [83] at 19.

Second, the "fraudulent redemption practices" category encompasses several acts between 2008 and 2013 forming part of an alleged scheme to allow redemptions and withdrawals of asset funds by friends, family members, and favored investors, while denying the redemption requests of at least 29 other investors and justifying the denials by misrepresenting that all redemptions had been suspended. See Dkt. No. [1] ¶¶ 71–97. The Court granted summary judgment to Plaintiff on Counts I, II, IV, and IX based on Defendants' repeated material misrepresentations regarding the redemption practices of the funds to actual and potential investors in various communications. See Dkt. No. [83] at 46.

The SEC moved to dismiss its remaining claims with prejudice on July 24, 2019. Dkt. No. [90]. The Court granted that Motion on July 26, 2019, dismissing with prejudice Counts VI and VII against Defendants Conrad and FMC. Dkt. No.

---

committed by an assistant branch manager of Conrad & Company, Inc. and attributed to the broker-dealer itself. See id., at *1–*5.

[91]. The SEC then moved to impose remedies against Defendant Conrad on August 16, 2019. Dkt. No. [92].[3]

## II.   DISCUSSION

The SEC asks the Court to enter final judgment against Conrad in the form of three remedies: (1) a permanent injunction preventing further violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder; (2) disgorgement totaling $590,305.75 plus prejudgment interest of $122,674.15; and (3) a civil penalty of $480,000.

### A. **Injunction against Future Violations**

The SEC requests an injunction against Conrad permanently restraining him from further violations of securities laws. See Dkt. No. [92-1] at 3. The Securities Act, Exchange Act, and Advisers Act authorize the Court to issue an injunction to prevent future violations. See 15 U.S.C. §§ 77t(b), 78u(d), 80b-9(d). The Court will award injunctive relief if it finds (1) a *prima facie* case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated. See Dkt. Nos. [92-1] (citing SEC v. Calvo, 378 F.3d 1211, 1216 (11th Cir. 2004)); [93] at 2 (also citing Calvo). The Court has already found previous violations. See Dkt. No. [83].

As to the second prong, courts consider a list of factors to determine

---

[3] The SEC has not sought remedies against FMC or SRL because Defendants' counsel has represented that those entities are defunct.

whether the wrong will be repeated, including the egregiousness of the violations, the isolated or repeated nature of the violations, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, the likelihood that the defendant's occupation will present opportunities for future violations, and the defendant's age and health. Calvo, 378 F.3d at 1216; SEC v. Miller, 744 F. Supp. 2d 1325, 1335 (N.D. Ga. 2010). The Eleventh Circuit has approved injunctions of future violations of the Securities and Exchange Acts where defendants were recidivist securities violators. See, e.g., SEC v. North Am. Clearing, Inc., 656 F. App'x 969, 972 (11th Cir. 2016) (finding "an ample" demonstration of previous violations); Calvo, 378 F.3d at 1216 (holding that a defendant's status as "a recidivist" supported the district court's finding of a reasonable likelihood of future violations).

Of the factors listed in Calvo, the SEC emphasizes "the egregious nature of Conrad's violations, the repeated nature of those violations, and the high degree of scienter." Dkt. No. [92-1] at 9. The SEC points to Conrad's numerous false representations made to investors over a multi-year period; his preferential disbursements to himself, his family members, and certain favored investors while telling other investors that redemptions were suspended; and his inducing numerous investors to invest without disclosing his disciplinary history, including his broker-dealer industry bar. Id. The SEC adds that Conrad is a recidivist securities violator who has never recognized the wrongfulness of his

conduct, but has in fact justified his fraud by stating that he was entitled to do whatever he chose to do regarding the Fund. Id. Even during this litigation, the SEC argues, Conrad continued to solicit investors without disclosing his disciplinary history or the fact that redemptions were frozen. Id. at 9–10.

Conrad responds that several factors counsel against an injunction. See Dkt. No. [93] at 3–4. He argues that his broker-dealer bar and his more recent violations were isolated incidences, not repeated wrongs. Id. at 3. He also argues that his age (88-years-old), health, and employment status (retired) make future violations less likely. Id. at 3–4. Conrad also claims he has neither ownership nor control of the Funds. Id. at 4. He reasons that all of these factors lower the risk of repeated violations, though he admits that a permanent injunction and bar "could be understood to reflect the Court's finding of multiple distinct violations within the facts found by the Court in its January 17, 2019 Order." Id. at 4 n.1.

The Court finds that the factors cited in Calvo support the SEC's request for a permanent injunction. The acts for which Defendant Conrad was held liable in the Court's summary judgment order were clear violations of securities statutes committed with a high degree of scienter over a period of years. Since his commission of those acts, and even during the pendency of this litigation, Conrad has not shown remorse or promised that he will cease his violations. Compare Dkt. No. [64-2] at ¶ 97 (Conrad claiming he could do "anything [he] chose to do") with Calvo, 378 F.3d at 1216 ("Calvo . . . has repeatedly failed to acknowledge the wrongful nature of his conduct."). Conrad's past disciplinary history and the

violations at issue here were not isolated or disconnected; his disciplinary history was the critical fact the omission of which made Conrad's solicitations materially misleading. See Dkt. No. [83] at 9–19. As to Conrad's age, the SEC rightly points out that "Conrad engaged in the fraudulent conduct at issue in this litigation throughout his eighties and continued to solicit investors into at least 2018." Dkt. No. [94] at 3. The factors in the Eleventh Circuit's test to determine whether the wrong will be repeated counsel in favor of an injunction: the egregiousness of Conrad's fraud, the multiple violations lasting over a period of years, the willfulness of the violations, and his refusal to acknowledge his wrongs. The SEC is entitled to an injunction against future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

## B. **Disgorgement and Prejudgment Interest**

The SEC also asks the Court to order Conrad to disgorge ill-gotten gains connected to the Valhalla litigation. Valhalla was a Ponzi scheme in which WOF invested and profited. See Dkt. No. [64-2] ¶¶ 17–18. A court-appointed receiver sued WOF based on WOF's Valhalla investment to recover the "fictitious profits withdrawn by WOF and [to return] the principal withdrawn by WOF" in a separate federal case in Florida. Id. at ¶ 19 (citing Wiand v. World Opportunity Fund, L.P., 8:10-cv-00203-EAK (M.D. Fla. 2010)). WOF's liability in that Florida litigation totaled $2.3 million. Dkt. No. [64-2] ¶ 19. WOF fully paid that liability in September 2014. Id. The fund also incurred $500,000 in attorneys' fees while

litigating against the Valhalla receiver. See Dkt. No. [92-1] at 6–7. Dale Conrad then apportioned WOF's Valhalla-scheme liability among investors who were invested in the fund when WOF recorded its Valhalla profits, among them FMC and FMC's retirement plan, both controlled by Conrad. Id. at 7.

A defendant who violates securities laws is generally liable for disgorgement of "ill-gotten gains." Calvo, 378 F.3d at 1217. The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains. Id. (citing SEC v. First City Fin. Corp., 890 F.2d 1215, 1231–32 (D.C. Cir. 1989)). Once the SEC produces a reasonable approximation, the "burden then shifts to the defendant to demonstrate that the SEC's estimate is not a reasonable approximation." Id. The approximation need not be exact, and "'any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty.'" Id. (citing SEC v. Warde, 151 F.3d 42, 50 (2d Cir. 1998)). Even so, "a court's power to order disgorgement is not unlimited." United States v. Stinson, 729 F. App'x 891, 899 (11th Cir. 2018). Disgorgement "extends only to the amount the defendant profited from his wrongdoing." Id. (citing SEC v. ETS Payphones, Inc., 408 F.3d 727, 735 (11th Cir. 2005)). And disgorgement should be "causally connected to the violation." First City Fin. Corp., 890 F.2d at 131.

According to the SEC, FMC and FMC's retirement plan never paid their share of the Valhalla liability, a $590,305.75 obligation. See id. (citing Dkt. No. [92-3] at 6). Instead, the SEC argues, Conrad directed Dale Conrad "to treat the amount as uncollectible and to reallocate the entities' share of liability among the

remaining investors." Id. Conrad used the Valhalla litigation as a pretense to freeze redemptions, telling investors that the Valhalla receiver had warned him that redemptions prior to its collection on the final judgment would amount to a fraudulent transfer. See Dkt. No. [83] 42–43. The SEC emphasizes that Conrad had absolute control over FMC; it contends that "FMC was his alter ego" and points to Conrad's admission that "FMC and me are the same people." Dkt. No. [92-1] at 8 (citing Dkt. No. [60] at 179, 283).[4]

Conrad responds that the SEC's request for disgorgement is disconnected from his wrongdoing and is excessive. Dkt. No. [93] at 4. Conrad argues that the Court's award of summary judgment to the SEC rested on the material misrepresentations made in connection with fraudulent redemptions, not on Conrad's wrongfully taking money for his own use: "The Court did not find that Dr. Conrad made any misrepresentations or received any funds in connection with the accounting for the Valhalla expenses." Id. at 6. Conrad also argues that his fraudulent misrepresentations about the fund's redemptions during the pendency of the Valhalla litigation were causally remote from the reallocation of Valhalla liability to other investors and the preferential redemptions from FMC. Conrad adds that he and FMC are distinct, and that disgorgement from the FMC retirement fund is inappropriate because the FMC retirement fund is not a party to this litigation. See Id. at 7–8.

---

[4] Conrad has always been president of FMC, and FMC has no employees. Dkt. No. [92-1] at 8.

The Court agrees with Defendant Conrad that SEC's requested disgorgement is not sufficiently related to his wrongdoing in this case. See Allstate Ins. Co. v. Receivable Finance Co., LLC, 501 F.3d 398, 413 (5th Cir. 2007) ("Because disgorgement is meant to be remedial and not punitive, it is limited to 'property causally related to the wrongdoing' at issue." (citing SEC v. First City Fin. Corp., 890 F.2d 1215, 1231 (D.C. Cir. 1989))). The Court did not hold Dr. Conrad or Dale Conrad liable for fraudulent accounting practices based on how they apportioned the Valhalla liability among the investors in WOF. Instead, the Court held Defendants liable for "material misrepresentations regarding the redemption practices of the funds." Dkt. No. [83] at 46.

The SEC has not approximated disgorgement based on how much Conrad withdrew from WOF while freezing investor redemptions, or how much he took from investors directly. Rather, the SEC charges Dr. Conrad and Dale Conrad with allegedly writing off their Valhalla liability. The Court did not rely on that charge in its Order granting summary judgment. The Court only once discussed the Valhalla litigation, referring to "a Ponzi scheme" as a "salient example" of a pretense that Conrad used to block investor redemptions. See Dkt. No. [83] at 42. The alleged reapportionment of liability that the SEC now invokes to justify disgorgement is too far removed from the material misrepresentations for which the Court granted summary judgment.[5]

---

[5] The SEC also asks for an award of prejudgment interest in the amount of $122,674.15. Dkt. No. [92-1] at 3, 12; see also Dkt No. [92-4] (calculating

## C. **Civil Penalties**

The SEC also asks this Court to award civil monetary penalties against Defendants. Section 20(d) of the Securities Act, Section 21(d)(3) of the Exchange Act, and Section 209(e) of the Advisers Act—with nearly identical language—allow the SEC to seek civil penalties imposed by the Court. The Exchange Act provides,

> Whenever it shall appear to the Commission that any person has violated any provision of this chapter, [or] the rules or regulations thereunder, . . . the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation.

15 U.S.C. § 78u(d)(3)(A).[6] To determine the amount of the penalty, the Act outlines three tiers based on the nature of the violation. Under the first tier, "[f]or *each violation*, the amount of the penalty shall not exceed the greater of (I) $7,500 for a natural person or $80,000 for any other person." 15 U.S.C. § 78u(d)(3)(B)(i) (emphasis added).[7] The second tier goes further:

---

prejudgment interest). This amount represents "the amount of money Conrad made or could have made by investing monies wrongfully obtained." Dkt. No. [94] at 7 (citing <u>SEC v. Koenig</u>, 557 F.3d 736, 745 (7th Cir. 2009)). Because the Court rejects the SEC's request for disgorgement, the Court declines to award prejudgment interest.

[6] The Court quotes only the Exchange Act to avoid redundancy.

[7] Each of the penalty caps have been updated for inflation per 17 C.F.R. § 201.1001. The penalty caps are identical for each of the statutory violations that the SEC invokes in this case. <u>See</u> 15 U.S.C. §§ 77t(d), 78u(d)(3), 80b-9(e). The SEC argues that the Court should assess civil penalties based on the March 6,

"Notwithstanding clause (i), the amount of penalty for *each such violation* shall not exceed the greater of (I) $80,000 for a natural person or $400,000 for any other person . . . if the violation described in subparagraph (A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 78u(d)(3)(B)(ii) (emphasis added). For the third tier, the Act states:

> Notwithstanding clauses (i) and (ii), the amount of penalty for *each such violation* shall not exceed the greater of (I) $160,000 for a natural person or $775,000 for any other person . . . if—
>
> > (aa) the violation described in subparagraph (A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and
> >
> > (bb) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

§ 78u(d)(3)(B)(iii) (emphasis added).

"Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." <u>Monterosso</u>, 756 F.3d at 1338. The "Commission need only make 'a proper showing' that a violation has occurred and a penalty is warranted." <u>SEC v. Warren</u>, 534 F.3d 1368, 1370 (11th Cir. 2008). Although the statute leaves the amount to be imposed to the discretion of the district judge, "courts consider numerous factors, including the egregiousness of the violation, the isolated or repeated nature of the violations,

---

2013 to November 2, 2015 adjustment, since Conrad's fraud continued into 2013 and 2014. Dkt. No. [92-1] at 13. The Court agrees.

the degree of scienter involved, whether the defendant concealed his trading, and the deterrent effect given the defendant's financial worth." <u>Miller</u>, 744 F. Supp. 2d at 1344 (citing <u>SEC v. Sargent</u>, 329 F.3d 34, 42 (1st Cir. 2003)). The Act also authorizes penalties for "each violation," so "courts are empowered to multiply the statutory penalty amount by the number of statutes the defendant violated, and many do." <u>Miller</u>, 744 F. Supp. 2d at 1345.

The SEC argues that Conrad should receive third-tier civil monetary penalties for several reasons. <u>See</u> Dkt. No. [92-1] at 14–15. The SEC reasons that many investors would never have joined the Fund if Conrad had disclosed his prior disciplinary history. <u>Id.</u> at 14. Conrad admitted that he never disclosed his disciplinary history and, the SEC says, he continued to solicit investors into 2018. <u>Id.</u> The SEC also argues that Conrad's fraudulent misrepresentations blocked investors from accessing their money for many years and that several suffered investment losses as a result of Conrad's misrepresentations. <u>Id.</u> The SEC also argues that the "preferential redemption scheme began as early as 2009 and continued throughout the litigation." <u>Id.</u> All of this Conrad did "with a high degree of scienter by continually lying to investors about redemptions and touting his credentials while purposefully hiding his disciplinary history." <u>Id.</u> at 14–15. Last, the SEC argues that Conrad's failure to accept any responsibility justifies the maximum penalty. <u>Id.</u> at 15.

Conrad disagrees. He argues that the SEC makes self-serving statements when it claims that investors would not have invested had they known about

Conrad's disciplinary history. Dkt. No. [93] at 10. He also contests the SEC's argument that Conrad's misrepresentations caused investors to suffer investment losses. Id. at 10–11. Conrad argues that the investors could have mitigated their losses because they had the option to "fix the value of their interest and become a creditor of the Fund in that fixed amount." Id. at 10. Evidently, the partners' losses were "entirely preventable by the redeeming partner—they simply had to take their money out of the market and give up any upside during that time period." Id. at 11. Conrad adds also that every investor has been redeemed who was named in the SEC's complaint, its motion for summary judgment, or who offered affidavits or deposition testimony. Id. Conrad also asks the Court to "consider a balance of the equities," including a list of grievances against the SEC and its method of prosecution. Id. at 12.

The applicable penalty tier depends on whether the Court, in its Summary Judgment Order, found that Conrad committed each violation with "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and whether Conrad's acts "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." See, e.g., 15 U.S.C. § 78u(d)(3)(B)(iii). If Conrad acted with "fraud, deceit, manipulation, or deliberate or reckless disregard" in any of his violations, that state of mind would call for a second-tier penalty. If, with the necessary state of mind, Conrad directly or indirectly caused "substantial losses or created a

significant risk of substantial losses to other persons," that result would demand a third-tier penalty.

The Court granted summary judgment to the SEC on Counts I, II, IV and IX arising from Defendants' fraudulent redemption practices. See Dkt. No. [83] at 46.[8] Count I of the Complaint arose under Section 17(a)(1) of the Securities Act, making it unlawful to use interstate commerce or the mails in connection with the offer or sale of securities "to employ any device, scheme or artifice to defraud." 15 U.S.C. § 77q(a)(1). To show a violation of 17(a)(1), Plaintiff proved "(1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with scienter." SEC v. Merch. Capital, LLC, 483 F.3d 747, 766 (11th Cir. 2007).

Count II of the Complaint arose under Sections 17(a)(2) and (3) of the Securities Act, the former of which makes it unlawful to use interstate commerce or the mails in the offer or sale of any securities "to obtain money or property by means of . . . any omission to state a material fact necessary in order to make the

---

[8] The Court also granted summary judgment to the SEC on Counts I, II, and IV arising from Defendants' nondisclosure of Defendant Conrad's disciplinary history. Dkt. No. [83] at 19. However, the SEC has only asked the Court to impose three civil penalties: one penalty each under 15 U.S.C. §§ 77t(d), 78u(d)(3), and 80b-9(e). Counts I and II, the bases for the SEC's requested penalties under 15 U.S.C. §§ 77t(d) and 78u(d)(3), involved both the disciplinary history claim and the fraudulent redemption claim. Because the Court finds sufficient bases to impose the maximum penalties based on Defendants' fraudulent redemption practices, the Court does not address penalties for Defendants' failure to disclose Conrad's disciplinary history. Count IX, the basis for the SEC's requested penalties under 15 U.S.C. § 78u(d)(3), only involves Defendants' fraudulent redemption practices.

statements made, in light of the circumstances under which they were made, not misleading[.]" 15 U.S.C. § 77q(a)(2). Section 17(a)(3) prohibits such use of interstate commerce or the mails "to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q(a)(3). To show a violation of either of these sections under Count II, Plaintiff proved that Defendants made material misrepresentations or materially misleading omissions in the offer or sale of securities, but scienter was not required. Count II could be met with a showing of negligence only. Merch. Capital, 483 F.3d at 766.

Count IV of the Complaint arose under Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder. Like Count I, Count IV required a showing of scienter. The three subparts of Rule 10b-5 closely track the language of the three methods of mail fraud set forth in Section 17(a) of the Securities Act. For instance, like Section 17(a)(2) of the Securities Act, "Rule 10b–5[(b)] prohibits not only literally false statements, but also any omissions of material fact 'necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1305 (11th Cir. 2011) (quoting 17 C.F.R. § 240.10b–5(b)).

Notably, Rule 10b-5 "is not read literally. Instead, a defendant's omission to state a material fact is proscribed only when the defendant has a duty to disclose." Rudolph v. Arthur Andersen & Co., 800 F.2d 1040, 1043 (11th Cir.

1986). "By voluntarily revealing one fact about its operations, a duty arises for the corporation to disclose such other facts, if any, as are necessary to ensure that what was revealed is not so incomplete as to mislead." FindWhat Inv'r Grp., 658 F.3d at 1305 (internal quotations and citation omitted). A statement is misleading if "in the light of the facts existing at the time of the [statement] . . . [a] reasonable investor, in exercise of due care, would have been misled by it." Id. (citing SEC v. Tex. Gulf Sulphur Co., 401 F.2d 833, 863 (2d Cir. 1968)).

Count IX arose under Section 206(4) of the Investment Advisers Act, 15 U.S.C. § 80b-6(4), as well as Rule 206(4)-8 thereunder. 17 C.F.R. § 275.206(4)-8. These statutes prohibit advisers to pooled investment vehicles like WOF from making false or misleading statements, omitting material facts, or otherwise engaging in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with regard to investors or prospective investors. Section 206(4) does not require scienter and can be met with a showing of negligence only.

The Court awarded summary judgment on each of these counts. "Scienter" is an element of Section 17(a)(1) of the Securities Act (the statutory basis of Count I). See 15 U.S.C. § 77q(a)(1). And "Section 10(b) of the Securities Exchange Act . . . requires a showing of scienter" (the statutory basis of Count IV). See Dkt. No. [83] at 10. Defendants did not refute the scienter elements of either of these counts, and the Court conducted its own review of the record evidence and found that Plaintiff adequately proved scienter, "even viewing the evidence in the light most favorable to Defendants." Dkt. No. [83] at 19; see also Dkt. No. [83] at 46

("Defendants have offered no arguments in their briefing on either motion to rebut Plaintiff's arguments and supporting evidence on . . . scienter (Counts I and IV).").[9] The Court finds that Conrad committed violations of 15 U.S.C. § 77q(a)(1) and 15 U.S.C. § 78j(2)(b) with the state of mind necessary for a second-tier penalty under Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act. See 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3).

However, the Court does not find that the SEC has met its burden to show "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" based on Conrad's violation of Section 206(4) of the Investment Advisers Act, 15 U.S.C. § 80b-6(4) and Rule 206(4)-8 thereunder (the basis for Count IX). The Court did find that Defendants failed to offer arguments about alleged "negligence" under Section 206(4). See Dkt. No. [83] at 46. But the Court did not find, as a matter of law, that Conrad's commission of Count IX involved a state of mind more deliberate than negligence. Id. Notably, the SEC argues that this Court may find the requisite mental state necessary for the imposition of a higher penalty even where it did not find that the SEC proved scienter as a matter of law. See Dkt. No. [92-1] at 13 (citing SEC v. Rosen, No. 01-0368-CIV, 2002 WL 34414715, at *13 (S.D. Fla. Apr. 2002), *aff'd in part sub. nom.*, Calvo, 378 F.3d at

---

[9] The Court does not address the question whether the SEC has shown the scienter necessary for a second-tier penalty based on Conrad's Count II violation of 15 U.S.C. §§ 77q(a)(2)−(3). By proving a violation of 15 U.S.C. § 77q(a)(1), the SEC has already proved the scienter necessary for a second-tier penalty (at least) under 15 U.S.C. § 77t(d), and the SEC only asks for one imposition of civil penalties under that statute. See Dkt. No. [92-1] at 12−13.

1215. However, the Eleventh Circuit did not directly address whether a court may find scienter for purposes of civil penalties even though the court did not find scienter for purposes of statutory liability.

As to the issue of harm, the Court does find that Conrad's material misrepresentations and fraudulent redemption practices directly or indirectly caused "substantial losses or created a significant risk of substantial losses to other persons." See, e.g., 15 U.S.C. § 78u(d)(3)(B)(iii). As the SEC points out, Conrad's fraudulent statements blocked investors from accessing their funds for years, and several suffered investment losses when their account values fell while their funds were frozen. See Dkt. No. [92-1] at 14. Conrad also redeemed millions from his own fund while keeping them at bay by telling them (falsely) that redemptions were frozen. See Dkt. No. [93] at 9. That Conrad redeemed some investors after the SEC specifically identified those investors does not exonerate him from the fraud he has committed. See id. at 9.

The Court will impose $327,500 in civil penalties: $160,000 (third tier) for each of Conrad's violations under Counts I and IV, arising under Section 17(a)(1) of the Securities Act and Section 10(b) of the Securities Exchange Act. 15 U.S.C. §§ 77t(d), 78u(d)(3). Those violations merit third-tier penalties because Conrad committed them with the necessary state of mind, and his acts caused substantial harm to investors. The Court will also impose a first-tier penalty in the amount of $7,500 for Conrad's commission of Count IX, arising under Section 209(e) of the Investment Advisers Act. 15 U.S.C. § 80b-9(e).

## **CONCLUSION**

### I.

It is hereby **ORDERED** that Defendant Conrad is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)     to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

(1) any investment in or offering of securities,

(2) Defendant's qualifications to advise investors,

(3) the prospects for success of any product or company,

(4) the use of investor funds,

(5) the redemption policies of any investment fund, or

(6) the misappropriation of investor funds or investment

proceeds.

**IT IS FURTHER ORDERED** that as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant Conrad or with anyone described in (a).

## II.

It is **ORDERED** that Defendant Conrad is permanently restrained and enjoined from violating Sections 17(a) of the Securities Act in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

22

(c)      to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

      (1) any investment in or offering of securities,

      (2) Defendant's qualifications to advise investors,

      (3) the prospects for success of any product or company,

      (4) the use of investor funds,

      (5) the redemption policies of any investment fund, or

      (6) the misappropriation of investor funds or investment proceeds.

**IT IS FURTHER ORDERED** as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

### III.

It is **ORDERED** that Defendant Conrad is permanently restrained and enjoined from violation Section 206(4) of the Investment Advisers Act and Rule

206(4)-8 thereunder, while acting as an investment adviser to a pooled

investment vehicle, by use of the means and instrumentalities of interstate

commerce and of the mails from

> (a)      making untrue statements of material fact or omitting to state
>
> material facts necessary to make statements made, in the light of
>
> circumstances under which they were made, not misleading, to investors
>
> and prospective investors in pooled investment vehicles; and
>
> (b)      engaging in acts, practices, and courses of business that are
>
> fraudulent, deceptive, and manipulative with respect to investors and
>
> prospective investors in pooled investment vehicles.

**IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil

Procedure 65(d)(2), the foregoing paragraph also binds the following who receive

actual notice of this Final Judgment by personal service or otherwise: (a)

Defendant's officers, agents, servants, employees, and attorneys; and (b) other

persons in active concert or participation with Defendant or with anyone

described in (a).

IV.

**IT IS FURTHER ORDERED** that Defendant Conrad is liable for civil

penalties in the amount of $327,500 pursuant to Section 20(d) of the Securities

Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. §

78u(d)(3)], and Section 209(e) of the Investment Advisers Act [15 U.S.C. § 80b-

9(e)]. Defendant Conrad shall satisfy this obligation by paying $327,500 to the

Securities and Exchange Commission within 45 days after entry of this Final Judgment.

Defendant Conrad may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request.  Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant Conrad may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Thomas D. Conrad as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant Conrad shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendant Conrad relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant Conrad. The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

V.

**IT IS FURTHER ORDERED** that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the complaint are true and admitted by Defendants, and further, any debt for civil penalty or other amounts due by Defendants under this Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendants of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

VI.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment. The Clerk is **DIRECTED** to **CLOSE** this case.

It is so ordered this 30th day of September, 2019.

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE